**APPLE COMPUTER, INC.,**
Plaintiff–Appellant,

v.

**ARTICULATE SYSTEMS, INC.,**
Defendant–Cross Appellant,

v.

**DRAGON SYSTEMS, INC.,**
Defendant–Appellee.

Nos. 99–1165, 99–1198.

United States Court of Appeals,
Federal Circuit.

Decided: Dec. 7, 2000.

Charles M. Morrow, Fenwick & West LLP, of Palo Alto, California, argued for plaintiff-appellant. With him on the brief were David L. Hayes, David C. McIntyre, Marta Beckwith, and Trinnie Arriola–Kern.

Howard G. Pollack, Fish & Richardson, P.C., of Menlo Park, California, argued for defendant-cross appellant and defendant-appellee. With him on the brief were John M. Skenyon, Fish & Richardson, of Boston, Massachusetts; Shelia N. Weinberger, and Timothy A. Porter, Fish & Richardson, of Menlo Park, California.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

## DECISION

ARCHER, Senior Circuit Judge.

Apple Computer, Inc. ("Apple") appeals the summary judgment of the United States District Court for the Northern District of California, invalidating U.S. Patent No. 5,469,540 ("the '540 patent"), issued November 21, 1995 and assigned to Apple.[1] Articulate Systems, Inc. ("Articulate") cross-appeals the district court's denial of its motion for attorneys' fees. We affirm-in-part, reverse-in-part, vacate-in-part, and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

The technology behind this appeal concerns the generation of multiple active windows in a graphical user interface. Apple owns several patents that cover this type of technology, including the '540 patent. The '540 patent, generally speaking, claims a method of displaying data on a computer screen in multiple windows that are simultaneously active. In this claimed system, the user may manipulate or operate on two or more displayed windows without having to toggle between active windows, and without changing the display order of the windows a primary window "floats" over one or more secondary windows. Articulate developed a computer dictation software system known as PowerSecretary. When PowerSecretary is running on a computer, a "Voicebar" floats on top of other windows to allow the user to access certain features of the software.

Apple originally brought suit against Articulate Systems alleging that Articulate's PowerSecretary product infringed four of Apple's patents, including the '540 patent. There are two versions of the PowerSecretary product—one for Microsoft Windows operating systems and one for MacIntosh operating systems. Apple alleged that both versions of the software infringed its patents. When Dragon Systems acquired PowerSecretary for Windows, Apple added Dragon Systems as a defendant.

Through a series of summary judgment motions by Articulate, this lawsuit was eventually narrowed to allegations of infringement of a single patent, the '540 patent, by a single product, the Windows version of PowerSecretary. First, the MacIntosh version of PowerSecretary was dropped from the suit because the court found that Apple had licensed Articulate to make, use, sell, copy, and otherwise distribute the MacIntosh version of PowerSecretary. Then the court found, based on Apple's admissions, that the Windows version of PowerSecretary did not infringe two of the four asserted patents. Finally, the court found that the Windows version of PowerSecretary did not infringe another of Apple's patents because Articulate could only be accused of inducement or contributory infringement and Apple could not provide proof of the requisite direct infringement.

With respect to the '540 patent, the only remaining patent in the lawsuit, Apple alleged infringement of claims 1, 2, 15–18, and 23–26. Claims 1 and 23 are independent claims and claims 2 and 15–18 and claims 24–26 are dependent claims depending from claims 1 and 23, respectively. Claim 1 claims a method of displaying simultaneously active windows and reads as follows:

    1. In a computer display system having a central processing unit (CPU) cou-

---

1. *Apple Computer v. Articulate Sys., Inc.,* No.      C–96–20421 JW (N.D.Cal. Oct. 6, 1998).

pled to a display such that data is displayed on said display in a plurality of windows, a method for displaying said windows and operating upon said windows and said data in said windows by a user, comprising the steps of:

generating and displaying each of said plurality of windows at a different window layer according to a window order, wherein a window at a higher window layer covers a window at a lower window layer to the extent that any of said windows overlap, wherein said step of generating and displaying each of said plurality of windows comprises the steps of generating and displaying a first window at a first window layer, wherein said first window layer is a highest window layer; generating and displaying a second window at a second window layer, wherein said first window has a portion that does not overlap with said second window; both of said windows being simultaneously active; and said user operating on both said first window and said second window without altering the window order of said plurality of windows.

Claim 23 is substantially similar to claim 1, claiming a computer display system capable of displaying simultaneously active windows. Claims 2 and 15 are dependent on claims 1 and 2, respectively, and further specify that the first window comprises a "help access window." Claim 16 is dependent on claim 1 and further specifies that "said CPU generates said first windows in response to execution of a first application and generates said second window in response to execution of a second application." The remaining asserted claims, 17, 18, and 24–26, are dependent on claims 1 and 23 and differ only slightly from these independent claims.

Having eliminated 3 of the 4 patents from the lawsuit, Articulate moved for summary judgment of invalidity of the '540 patent. Specifically, Articulate asserted that claims 1, 2, 15, 17, 18, and 23–26 of the '540 patent were anticipated by prior art Adobe Photoshop software. Articulate further alleged that claim 16, the only other claim asserted by Apple, was also invalid as obvious over Adobe Photoshop in conjunction with a certain MacTutor publication.

Adobe Photoshop is a graphics software package that allows a user to create drawings on a drawing window on a computer screen. Adobe Photoshop also has a tool palette that is displayed next to the drawing window, or may be positioned to overlap the drawing window. The palette is a menu of drawing commands or tools that can be selected by clicking on the icon in the palette for that function. A user may successively manipulate or click on the drawing window and the palette without changing the displayed ordering of these items. The palette will continue to float on top of the drawing window.

Articulate argued that the drawing window and tool palette "window" of Adobe Photoshop were simultaneously active windows as claimed in the '540 patent. According to Articulate, these features of Adobe Photoshop anticipated claims 1, 2, 15, 17, 18, and 23–26 of the '540 patent and rendered them invalid.

The MacTutor article (Don Melton and Mike Ritter, *C Workshop, Tear-off Menus and Floating Palettes*, MacTutor, April 1988, at 26) describes "tear-off" menus [2] and floating palettes in graphical display systems. Articulate argued that the MacTutor article further disclosed that simultaneously active windows could be generated by separate applications. According to Articulate, this publication, together with Adobe Photoshop, rendered claim 16 of the '540 patent invalid for obviousness.

---

**2.** A "tear-off" menu is a menu bar or window that may be repositioned at will to different locations on the display screen.

To assist in deciding Articulate's summary judgment motion, the court held a claim interpretation hearing pursuant to *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Following that hearing, the court issued its first order, construing the following claim terms at issue:

*window*—a framing device on the computer screen that displays information and may set the displayed information apart from other information on the screen;

*operate on a window*—opening, closing, moving or resizing a window without manipulating the data contained within such window;

*operate on data in a window*—manipulating the data contained within a window without necessarily opening, closing, moving or resizing the window;

*help access window*—a window that contains one or more controls for accessing information which has been loaded on the central processing unit ("CPU").

The court subsequently issued a second order, granting Articulate's motion for summary judgment, finding that claims 1, 2, 15–18 and 23–26 of the '540 patent are invalid.

In making its findings of invalidity in its second order, the court further construed additional claim terms as follows:

*simultaneously active windows*—two or more defined and separated areas on the computer screen which are open at the same time and may be operated on by the user;

*active*—simultaneously available for operation.

In finding the '540 patent invalid, the district court compared the claims with the prior art. The district court referenced the declaration of Articulate's expert and concluded, without any further elaboration, that the computer program known as Adobe Photoshop "disclosed each and every limitation contained in independent claims 1 and 23." It also found that "[e]ach of the remaining claims of the '540 patent depend[s] on claims 1 and 23, so they are also anticipated by Adobe Photoshop."

The court further noted that claims 2 and 15, also dependent on claims 1 and 2, respectively, differ from the remaining claims by defining the first window as a "help access window." Apple defined this term during prosecution as "a window that contains one or more user interface controls for accessing information related to software that is loaded on said CPU." The court concluded that the prior art met these claim limitations.

Apparently addressing the only remaining asserted claim, claim 16, the court concluded that the '540 patent was anticipated or rendered obvious by the Photoshop software. Having found all claims at issue invalid, the district court entered final judgment in favor of Articulate. Apple now appeals this judgment.

Following the court's ruling in its favor on summary judgment, Articulate moved to have the case declared an exceptional case and further moved for an award of attorneys' fees. The court found, however, that Articulate had not provided clear and convincing evidence that this was an exceptional case. Specifically, the court found that Articulate had failed to prove that Apple's infringement suit was purely retaliatory and, therefore, in bad faith. The court further found that Apple's pretrial investigation was sufficient. Finally, the court noted that even though much of Apple's suit was summarily dismissed, that did not automatically mean that Articulate was entitled to attorneys' fees. Articulate cross-appeals this denial of their request for attorneys' fees.

## DISCUSSION

### I

Summary judgment may be entered when there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute over a material fact to be "genuine" the evidence must be "such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The burden is upon the movant to establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1022, 226 USPQ 881, 884 (Fed. Cir.1985). Once the movant has established a prima facie case for summary judgment, the nonmovant must come forward with evidence demonstrating a genuine issue as to a material fact. *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

■ "In rendering a decision on a motion for summary judgment, a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." *Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877, 880, 45 USPQ2d 1977, 1981 (Fed.Cir.1998) (quoting *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505). Summary judgment of invalidity, therefore, must be predicated on facts established by clear and convincing evidence. *Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1362, 47 USPQ2d 1027, 1029 (Fed.Cir. 1998).

We review the district court's grant of summary judgment *de novo. Id.*

## II

■ The district court found each of the asserted claims anticipated and, therefore, invalid.[3] Anticipation under 35 U.S.C. § 102 requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention. *Electro Med. Sys. S.A. v. Cooper Life Sciences,* 34 F.3d 1048, 1052, 32 USPQ2d 1017, 1019 (Fed.Cir.1994). Whether such art is anticipating is a question of fact. *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1010 (Fed.Cir.1991).

■ On appeal, Apple does not contest the district court's factual findings with respect to its ultimate finding of anticipation. Indeed, the parties appear to be in agreement on the content and characterization of the prior art.[4] Rather, Apple challenges the legal analysis and the underlying claim interpretation of the court that led it to conclude that the asserted claims of the '540 patent were invalid. Claim construction is a question of law, which we review *de novo. Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1173 (Fed.Cir.1998) (*en banc* ). In conducting this *de novo* review, however, "we begin with and carefully consider the trial court's work." *Key Pharm. v. Hercon Labs. Corp.,* 161 F.3d 709, 713, 48 USPQ2d 1911, 1914 (Fed.Cir.1999) (citing *Cybor,* 138 F.3d at 1462–63, 46 USPQ2d at 1179–81 (Plager and Bryson, JJ., concurring separately)).

### A. Claims 1 and 23

The district court summarily found claims 1 and 23 invalid under 35 U.S.C.

---

3. Apparently, the district court found claim 16 to be invalid for obviousness as well.

4. In finding the '540 patent anticipated, the district court applied 35 U.S.C. § 102(b), finding that Adobe Photoshop was on sale in the United States more than one year before the

filing of the application that led to the '540 patent. While Apple takes exception to the district court's finding of invalidity, it does not dispute the prior sale of the Adobe Photoshop software, nor does it dispute the characterization of that software.

§ 102(b), stating only that "[Adobe] Photoshop discloses each and every limitation contained in independent claims 1 and 23." On appeal, Apple claims legal error in this finding of anticipation, and in the underlying claim interpretation of the terms "windows" and "simultaneously active." Finding no legal error in the district court's claim construction, we affirm the district court's judgment of invalidity of claims 1 and 23.

■ 1. Apple first asserts that the district court's interpretation of "window" is in error because the court improperly ignored the distinction in the patent specification between "windows" and "menus." According to Apple, the palette of Adobe Photoshop is a type of menu (a "tear-off" menu) and, therefore, not a window within the meaning of the '540 patent. The court's misinterpretation of the term "window," claims Apple, led the court to erroneously find Adobe Photoshop anticipatory.

Apple argues that the '540 patent specification separately refers to both windows and menus, and the specification describes how menus may be included within windows. Therefore, according to Apple, windows and menus are distinguished. Apple further argues that the windows of the '540 patent are limited to windows in which data is displayed, and data cannot include commands. In support of this argument, Apple points to language in claims 1 and 23 requiring the display of "data" and to portions of the specification that distinguish data from commands or functions.

Apple's interpretation of "windows" necessarily excludes menus or palettes, since these graphical features are distinct and since these features display functions, not data. Based on this interpretation, Adobe Photoshop is not anticipatory since it contains only one window within Apple's definition.

We are not persuaded by Apple's arguments. Notwithstanding Apple's arguments to the contrary, the evidence fully supports the district court's construction of the term "window." According to the written description of the '540 patent, "windows" "may take the form of a variety of objects, such [as] a file folder, loose leaf binders, or simple rectangles." Col. 1, lines 48–50. The written description further teaches that the windows of Apple's invention "include defined areas having window features such as menu bars, command options, text, icons, *and/or* button functions to be executed by the CPU." Col. 3, lines 8–11 (emphasis added). Taking the language of the '540 patent at face value, a simple icon that performs a button function is a "window." Thus, the palette of Adobe Photoshop, incorporating a number of function keys within a defined area, is surely a "window" for the purposes of the '540 patent.

■ Moreover, this broad definition of the term "window" is not at odds with the common definition of those skilled in the art. Indeed, as demonstrated by the very references cited in the '540 patent specification, menu bars or buttons are commonly understood to be types of windows by those skilled in the art.[5]

Similarly, in light of the clear language of the specification, Apple's argument that the window of its invention must include data in the form of text, as opposed to

---

5. We acknowledge Apple's assertion that a patentee is free to be his own lexicographer, and may define claim terms in ways that differ from the common understanding of those skilled in the art. *Autogiro Co. of Am. v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 397, 155 USPQ 697, 702 (1967). In order to do so, however, a patentee must deliberately and clearly point out how these terms differ from the conventional understanding. *Reni-*

shaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1249, 48 USPQ2d 1117, 1121 (Fed.Cir.1998). Apple did not do so here. Instead, Apple described the term "window" in a manner that was consistent with its definition in the pertinent art. Moreover, rather than specifying a narrower meaning for this term, Apple taught that the terms of its claims were to be construed broadly. *See* Col. 16, lines 25–26.

mere functions or commands, is equally unavailing.

■ First, we reject Apple's contention that claims 1 and 23 (and the corresponding dependent claims) require windows containing "data" that a user may operate on. This recitation of "data" in the claimed windows appears in the preambles of claims 1 and 23. The body of claim 23 also refers to data in the windows, but only as a possibility, not as a requirement. Thus, if the "windows" of the claimed invention are to be limited to windows containing "data," this limitation must come from the preambles of claims 1 and 23. Language in a claim preamble, however, acts as a claim limitation only when such language serves to "give meaning to a claim and properly define the invention," not when the preamble merely states a purpose or intended use of the invention. *In re Paulsen,* 30 F.3d 1475, 1479, 31 USPQ2d 1671, 1673 (Fed.Cir.1994) (quoting *DeGeorge v. Bernier,* 768 F.2d 1318, 1322 n. 3, 226 USPQ 758, 764 n. 3 (Fed.Cir. 1985)). Viewing the claims as a whole and in light of the written description, the recitation of "data" in the preambles of claims 1 and 23 does not give meaning to these claims nor serve to define the invention. Instead, the term "data" refers to a purpose or intended use of the windows of the claimed invention.

Second, even if we were to find that the recitation of "data" in the claim preambles acts as a claim limitation, we would conclude that this term is used in a broad sense, and that this broad meaning of data is consistent with the district court's interpretation of the term "window." The written description uses the term "data" to include both text and command features:

> The access window 130 includes a working area 145 in which the CPU 52 displays instructions, text or *command options.* The working area 145 includes a vertical slider 148 for scrolling through

*data* displayed within the working area 145.

(emphasis added) Col. 8, lines 14–16. Thus, the term "data" cannot exclude commands, as argued by Apple.

Finally, we also note that the preferred embodiment of the '540 patent further suggests that Apple's narrow interpretation of "data" cannot be correct. Claims 1 and 23 specify that the user may operate on the "data" displayed in the plurality of windows of the invention.[6] In most of the help windows of the preferred embodiment of the '540 patent, however, the only data that may be operated on are icons or command keys, in many instances a command key labeled "HUH?" Therefore, under Apple's proposed interpretation, there are no data in most of the help windows of its preferred embodiment to be operated on by the user. And while this evidence alone is not necessarily dispositive of the claim construction issue, it further suggests the incorrectness of Apple's proposed interpretation that the "data" displayed in the windows of its invention does not include icons or command keys.

Accordingly, we reject Apple's arguments that the district court misconstrued the term "window."

■ 2. Apple next argues that the district court's construction of "simultaneously active windows" is incorrect in that it improperly fails to lend separate meaning to the requirement that the claimed active windows be operable on. Claim 1, argues Apple, is exemplary of this distinction in the '540 patent in that it first recites that "both" the first and second windows are "simultaneously active," and then, in a separate limitation, requires "said user operating on both said first window and said second window without altering the window order." Apple also argues that this same distinction is present in claim 23 and in the patent specification.

---

**6.** The preamble of claim 1 recites that the plurality of windows contains data that may be operated on by the user. The body of

claim 23 recites that a user may operate on the windows or data disposed in the windows.

"Operating on a window," Apple insists, must mean manipulating the window or data in the window as if an actual file or other physical object were being manipulated. Thus, Apple claims, an operable window is distinct from an active window. And taking this construction, Adobe Photoshop does not anticipate claims 1 and 23 because, while the tool palette is active, it may not be "operated on" within Apple's proposed definition. It may be moved about the display screen, but it may not be resized, nor may the contents be reorganized, nor may the palette be otherwise manipulated.

We reject this argument as well. The district court correctly found that, in the context of the '540 patent, "active" means available for operation.[7] As the specification describes:

> Using the techniques of the present invention, the presentation window 300 or access window 130 'floats' above other application windows, such as window 302, and are simultaneously active, *thereby allowing the user to operate on both windows* 302 and 300 without altering the ordering of the window layers.

Col. 12, lines 46–55 (emphasis added). In contrast, prior art systems were distinguished in that they required an initial mouse click to activate the window before operation on that window was possible. Thus, "active," in the context of the '540 patent, means available for operation, and the invention of the '540 patent allowed multiple windows to be available for operation (active) without the need of a preliminary mouse click.

As for the separate recitation of the requirements that both windows be active and operable on without changing the ordering of the windows, contrary to Apple's assertions, the district court's interpretation does preserve these separate limitations. The second limitation concerns the effect of a user operating on a window, not the fact that it may be operated on. Both windows could potentially be active (or operable on), yet, operating on the windows could change the display order. In contrast, the claim separately specifies that the windows are both active (operable on) and that operating on these windows will not change their display order; one window "floats" over the other. Thus, both limitations are preserved.

■ 3. Finally, Apple argues that the district court's claim construction improperly causes the claims to read on prior art before the examiner during the prosecution of the '540 patent. Specifically, Apple points to U.S. Patent No. 4,931,783 ("the '783 patent"), issued June 5, 1990, and a manual describing the preferred embodiment of the '783 patent, "Hypercard." Each of these references was considered by the Examiner in the prosecution of the '540 patent. The '783 patent describes "tear-off" menus whereby portions of a menu bar may be "torn off" and moved about the display screen. The Hypercard program includes this "tear-off" menu feature and further allows the simultaneous operation of a palette of commands with a document window. When operated in this manner, Hypercard strongly resembles the window and palette format of Adobe Photoshop. Apple argues, therefore, that the district court's interpretation reads on the '783 patent and the Hypercard product and that the claims of the '540 patent must be interpreted more narrowly to avoid the prior art before the examiner during prosecution.

We reject this final argument as well. To be sure, the district court's claim construction does cause the claims to read on the Hypercard program. This does not, however, negate the district court's claim construction or finding of anticipation. Indeed, it provides further evidence that the

---

7. Specifically, the district court found that " 'active' means simultaneously available for operation." Viewed in context, however, the court actually defined "simultaneously active" in order to construe the limitation "simultaneously active windows."

claimed invention of the '540 patent was not novel.

The palette feature of the Hypercard program was in no way evident from the manual submitted during the prosecution of the '540 patent. Moreover, in submitting this reference, Apple directed the Examiner's attention to another feature, the "message box," and made no mention of the palette feature. Similarly, it is not evident from the specification of the '783 patent that the tear off menu feature allowed the user to superimpose such a menu window over any other window. Nor is it taught that such superimposed windows are simultaneously active and will not change order when operated upon. Thus, the fact that the examiner allowed the claims of the '540 patent over these references does not support Apple's attempt to narrow its claims to avoid certain features disclosed in these references.

■ In addition, while Apple is correct that "claims should be read in a way that avoids ensnaring prior art if it is possible to do so," (*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1556, 42 USPQ2d 1737, 1743 (Fed.Cir. 1997)), here it is not possible to do so. Where "the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then the axiom does not apply and the claim is simply invalid." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345, 51 USPQ2d 1377, 1379 (Fed.Cir.1999). *See also Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 & n. 6, 17 USPQ2d 1097, 1102 & n. 6 (Fed.Cir.1990) (judicial redrafting of claims to preserve validity is impermissible). We are convinced that claims 1 and 23 are simply invalid.

In conclusion, we find none of Apple's arguments persuasive. We therefore affirm the district court's summary judgment of invalidity of claims 1 and 23.

**B.  Claims 2 and 15**

■ Having found claims 1 and 23 anticipated by Adobe Photoshop, the district court concluded that the other asserted claims, each dependent upon claims 1 or 23, were also anticipated by this same reference. With respect to claims 2 and 15, however, the court further noted that, while these claims defined the first window as a help access window, this additional limitation was also met by Adobe Photoshop. Apple claims legal error in the district court's failure to consider these claims individually and in its broad construction of the term "help access window." We agree.

■ As Apple correctly points out, each claim of a patent is "presumed valid independently of . . . the other claims" and "dependent . . . claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282 (1994); *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 446, 230 USPQ 416, 418 (Fed.Cir.1986). Thus, the district court improperly concluded that the dependent claims were invalid. Moreover, with respect to claims 2 and 15, the district court's interpretation of "help access window" was so broad as to read the "help" limitation out of the claim.

In support of the district court's construction of "help access window," Articulate points to the language of claim 2 and to the prosecution history.[8] Articulate notes that, as originally filed, claim 2 did not specify the meaning of help access window. Then, in response to an indefiniteness rejection, Apple broadly defined the help access window as: "said help access window being a window that contains one or more user interface controls for accessing information related to software that is loaded on said CPU." Having adopted such a broad definition within the text of the claim, Articulate argues, Apple cannot now narrow that definition. Accordingly, Articulate asserts that the dis-

---

**8.** Claim 15 depends from claim 2 and incor-   porates its definition of help access window.

trict court's finding of anticipation of claims 2 and 15 was correct.

■ We cannot accept this argument. The claim interpretation Articulate asserts focuses on the words following "help access window" and ignores the limitation imposed by the word "help." The undeniably broad statement recited in claim 2 (and incorporated into claim 15) simply cannot read the qualifier "help" out of the definition of "help access window." Rather, the claim must be viewed as a whole. *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274, 23 USPQ2d 1839, 1840 (Fed.Cir.1992) ("each claim is an entity that must be considered as a whole"). Doing so reveals that the claimed window is not intended to access just any information on the CPU; it is intended to access help information. Moreover, the claim must be interpreted in light of the teachings of the written description and purpose of the invention described therein. *Strattec Sec. Corp. v. Gen. Auto. Specialty Co., Inc.*, 126 F.3d 1411, 1417, 44 USPQ2d 1030, 1034–5 (Fed. Cir.1997) (holding that it was legal error for the district court to instruct the jury that the term "sheet" was not properly considered part of the claim); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479, 45 USPQ2d 1498, 1503 (Fed.Cir. 1998) (relying, in part, on the stated purpose of the invention in construing the claims). Reading the claim in this context reveals that the help access window serves to access help information from a help system or database. The written description describes in great detail how the help access window of the invention allows a user to access help information from the computer system. *See* '540 patent, col. 7, line 61—col. 10, line 16.

Thus, this limitation cannot be given the broad interpretation adopted by the district court, and instead should be construed as follows:

> *help access window*—a window that contains one or more controls for accessing help information from a help system or

database that has been loaded on the central processing unit (CPU).

Applying this construction of "help access window" Adobe Photoshop cannot anticipate claims 2 and 15 since the palette window cannot be considered a help access window.

This does not end the inquiry, however, because claims 2 and 15 may still be obvious in light of Adobe Photoshop and other prior art. The district court, having found the claims anticipated, never addressed the question of obviousness. Thus, we have no holding of obviousness to review. Accordingly, we remand the question of obviousness to the district court.

### C. Claims 17, 18, and 24–26

As noted above, having found claims 1 and 23 anticipated by Adobe Photoshop, the court concluded that the remaining asserted claims, all dependent from claims 1 and 23, were similarly anticipated. On appeal, Apple argues that the court erred in not separately considering the validity of each asserted claim. As also noted above, we agree with Apple that the court should have separately considered each claim. Nonetheless, there is ample evidence to affirm the district court's judgment that the remaining claims are anticipated by Adobe Photoshop.

■ Dependent claims 17, 18, and 24–26 are all very similar to the independent claims 1 and 23, and the additional limitations in these dependent claims are all found in Adobe Photoshop. Claims 17 and 24 recite an additional limitation of a "selective positioning" feature. It is uncontested that the palette and the drawing window of Adobe Photoshop may each be positioned selectively. Claim 25 includes the additional limitation that "said first layer is a highest window layer and second layer is a next-to-highest window layer." It is equally uncontested that the drawing window and palette of Adobe Photoshop meet this limitation. Finally, claims 18 and 26 further require the generation of a

third window at a third window layer, where the third window is inactive when the first and second windows are active. It is uncontested that Adobe Photoshop also meets this requirement.

Accordingly, we see no error in the district court's ultimate conclusion that Adobe Photoshop anticipates claims 17, 18, and 24–26. This judgment of the district court is affirmed.

### D. Claim 16

It is unclear from the district court's opinion why it held claim 16 invalid. The court never specifically discussed this claim in its opinion, aside from finding that claims dependent from claims 1 and 23, as a group, were anticipated by Adobe Photoshop. And while claim 16 is dependent from claim 1, the court's finding of anticipation cannot apply to claim 16 because Articulate never argued anticipation with respect to this claim. Thus, there is no factual dispute that claim 16 is not anticipated, and the district court has not made any specific factual findings to the contrary. In the absence of any factual support, the district court's holding of anticipation of claim 16 must be reversed.

On appeal, both parties agree that the district court must have invalidated claim 16 as obvious over the prior art. This was the basis asserted by Articulate in its motion for summary judgment. The district court, however, failed to address Articulate's arguments of obviousness, aside from a passing reference to the ′540 patent being "anticipated or rendered obvious by the Photoshop software." Accordingly, we are left to speculate as to the legal and factual bases for the court's decision. This record is simply insufficient for meaningful review.

■■■■■ One attacking the validity of a patent must present clear and convincing evidence establishing facts that lead to the legal conclusion of invalidity. 35 U.S.C. § 282. To establish invalidity under 35 U.S.C. § 103, certain factual predicates

are required before the legal conclusion of obviousness or nonobviousness can be reached. The underlying factual determinations to be made are (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness, such as commercial success, long-felt but unsolved need, failure of others, copying, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). While the district court did recite the correct legal standard for an obviousness determination and did enumerate the *Graham* factors, it apparently never applied this legal standard nor made any factual findings with respect to the *Graham* factors. A failure to enumerate and analyze the *Graham* factors explicitly is not necessarily reversible error, provided the proper factual determinations were made and the court considered them in rendering its conclusion of obviousness. *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 990, 6 USPQ2d 1601, 1607 (Fed. Cir.1988). Here, however, the record is virtually silent, and we can only conclude that the district court failed to make the requisite factual findings. Thus, we have no basis for reviewing the court's legal determination and must vacate the court's summary judgment of obviousness with respect to claim 16 and remand this matter for analysis by the district court. *Greenwood v. Hattori Seiko Co.*, 900 F.2d 238, 239, 14 USPQ2d 1474, 1476 (Fed.Cir.1990); *Bausch and Lomb*, 796 F.2d at 446, 230 USPQ at 419.

### III

■■■■■ On cross appeal, Articulate argues that the district court erred in failing to find the present case an exceptional case. Articulate contends that the district court did not properly consider Apple's conduct in light of all circumstances and erred in accepting Apple's argument that it reasonably investigated the merits of its

claim before bringing suit. A district court's determination that a case is exceptional is a factual determination that we review for clear error. *Cybor*, 138 F.3d at 1460, 46 USPQ2d at 1178. We find no clear error here warranting a reversal of the district court's judgment.

Contrary to Articulate's allegations, we see no indication that the district court considered the alleged evidence of bad faith in isolation, rather than as a whole. The district court considered Articulate's arguments and concluded that "Apple, like other similarly situated patentees, diligently polices its intellectual property."

With regard to the issue of Apple's pretrial investigation, as Articulate points out, the district court concluded that the only objective evidence supporting Apple's declaration concerning its pretrial investigations was a single entry in Apple's privilege log. And the infringement opinion corresponding to this privilege log entry was never produced, nor was it ever reviewed by the district court. We note, however, that Apple offered to produce this document for the court's *in camera* inspection, and the court declined Apple's offer. We conclude, therefore, that the court must have been satisfied based on all of the evidence, including the declaration of counsel for Apple and the court's familiarity with the parties based on their conduct during the entire course of the trial, that Apple conducted an adequate pretrial investigation. We see no clear error in this judgment.

The judgment of the district court denying Articulate's cross claim is affirmed.

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.*